## BANKERS' SERVICE CORPORATION v. LANDIS CHRISTMAS SAVINGS CLUB CO.

(District Court, M. D. Pennsylvania.    October Term, 1920.)

### No. 269–A.

Patents ⬤⇒328—1,202,646, for coupon bank deposit book, void for lack of invention.

> The Barkley patent, No. 1,202,646, for a coupon bank deposit book, *held* void for lack of patentable novelty and invention.

In Equity.    Suit by the Bankers' Service Corporation against the Landis Christmas Savings Club Company.    Decree for defendant. Decree affirmed 273 Fed. 722.

Bartlett & Brownell, of New York City, and R. L. Levy and A. V. Bower, both of Scranton, Pa., for plaintiff.

Jas. A. Watson, of Washington, D. C., and E. E. Beidleman and J. W. Swartz, both of Harrisburg, Pa., for defendant.

WITMER, District Judge.    This suit was brought to enjoin infringement and to enforce accounting on letters patent No. 1,202,646, granted to plaintiff corporation, assignee of Merrill B. Barkley.    The subject in controversy relates to a so-called improvement in coupon bank deposit books, calculated to facilitate making deposits in banks or other saving institutions.    These books are commonly used in groups or series by so-called "clubs" of depositors in connection with a method or system for handling such accounts.    Plaintiff's patent application specifies that

> "There has developed recently in banking circles a wide demand for various kinds of special savings accounts, known generally as Christmas clubs, vacation accounts, outing savings clubs, and the like, under which each depositor enters into an agreement with the bank whereby specified amounts are due to be deposited at definite times, the bank in its turn at the expiration of the aggregate period, say at Christmas time, paying back a certain amount, usually the principal wholly or in part as may be agreed upon, with interest; the object of such a system being mainly to encourage thrift and regularity on the part of new and prospective patrons in developing the savings habit.
>
> "Although this invention is especially applicable to savings accounts of the character stated, it is not limited thereto, but may be used to advantage for various other purposes wherein a serial or multipartite transaction is involved, notably in connection with installment purchases, and the payment of rents, current service charges of a predeterminable character, and the like. Such a system, in order to be convenient, efficient, and practical, required special means to facilitate accounting and to keep the party carrying the current obligation informed as to the condition of his account and when payments are due.
>
> "The main objects of this invention are to provide an improved system for use in connection with the making of a series of payments or deposits on account from time to time as may be agreed upon; to provide an improved form of receipt book, having provision for indicating the amounts payable

by the holder at certain times, and having provision for the recording of receipts therein; to provide such a book, having coupons adapted when removed to serve as a record for the payee; to provide an improved form of bank deposit book, having means whereby the depositor or a bank clerk, upon inspecting the same, may see at a glance what payments have been made and what payments are coming due, with the dates thereof; to provide in such book a table including pay dates and amounts due, and showing certain group aggregates indicating the totals payable in certain longer periods; and to provide a coupon book of the character specified which, with a deposit, may be mailed under a two-cent stamp.

"An illustrative embodiment of this invention is shown in the accompanying drawings."

Fig. 1

Plaintiff relies on claims 5 and 6 of the patent as embodying the essential features of Barkley's invention, viz.:

"5. A deposit book, adapted to indicate the amounts paid and to be paid by a depositor or a bank's customer, comprising a plurality of sheets and detachable coupons, each coupon and corresponding sheet portion having corresponding imprints to indicate the specific act of payment to be made in connection therewith, the coupons being arranged in arithmetical series and bearing a common designating mark.

"6. A deposit book, adapted to indicate the amounts paid by a depositor or a bank's customer, comprising a plurality of sheets and detachable coupons, the sheets and those coupons which remain attached to be held by the depositor until the account is closed, each of said coupons having an imprint indicating in any desired terms a specific part of an obligation to be carried out or performed at a given time, and each coupon as well as that part of the book retained by the depositor having like designating means."

The defense insists that these claims relied upon by the plaintiff are void for want of patentable novelty and invention.

When Barkley came into the field with his alleged invention, there had already been developed in banking circles a "wide demand for various kinds of special savings accounts known generally as Christmas clubs, vacation accounts, and the like," operated and conducted by a savings system of which Merkel Landis, a banker of Carlisle, Pa., was the orig-

inator. It is without contradiction that in or prior to 1911 Landis conceived and put into operation the idea of creating and operating Christmas savings clubs in connection with banks, for the purpose of promoting the business of the banks and encouraging people to open savings accounts, involving the use of detachable coupons representing deposits, and the first to put such a system or scheme into operation. A copyright was obtained the same year and later the defendant company, the Landis Christmas Savings Club Company, was organized, to which his rights in the letters were assigned and the business of the company prospered to the extent, as stated by Mr. Boll, its president:

"We had about 500 banks as customers in 1911, about 890 banks in 1912, and nearly 1,300 banks in 1913."

The business of the company was to explain to their customers the Landis scheme and to sell to them the coupon sheets and envelopes as here shown.

Keep Your Receipts in this Envelope

No........**900**........     Class     **1**

This certifies that the above is a member of the

## Christmas Savings Club 1911

subject to the rules and regulations printed below

## Union Trust Co. of Pennsylvania

### Harrisburg, Pa.

By

Treasurer

#### RULES AND REGULATIONS

1 Class **1** requires the payment of **1** cents the first week and each week thereafter the weekly deposit is increased by adding to the preceeding week's deposit the amount of the first week's deposit.

2. At the end of 36 weeks the total amount paid in by a member increased by the interest earned thereon at the rate of 3 per cent. per year will be paid to said member.

3. All payments are due on Monday of each week and must be paid before the close of business on Saturday evening of that week.

4. Members neglecting to make their weekly payments will receive only the principal paid in.

5. No withdrawals or transfers will be allowed.

Copyrighted 1911 by Merkel Landis, Carlisle, Pa.

## CLASS 1

### Amounts to be Paid on

| April | | | Aug. | | |
|---|---|---|---|---|---|
| | 3 | .01 | | 7 | .19 |
| | 10 | .02 | | 14 | .20 |
| | 17 | .03 | | 21 | .21 |
| | 24 | .04 | | 28 | .22 |
| May | 1 | .05 | Sept. | 4 | .23 |
| | 8 | .06 | | 11 | .24 |
| | 15 | .07 | | 18 | .25 |
| | 22 | .08 | | 25 | .26 |
| | 29 | .09 | Oct. | 2 | .27 |
| June | 5 | .10 | | 9 | .28 |
| | 12 | .11 | | 16 | .29 |
| | 19 | .12 | | 23 | .30 |
| | 26 | .13 | | 30 | .31 |
| July | 3 | .14 | Nov. | 6 | .32 |
| | 10 | .15 | | 13 | .33 |
| | 17 | .16 | | 20 | .34 |
| | 24 | .17 | | 27 | .35 |
| | 31 | .18 | Dec. | 4 | .36 |

Account No. 2999

Class..........

| DATE | FINES RECEIVED | | AMOUNT |
|---|---|---|---|

The coupon sheet contains repeated entries of the form:

UNION TRUST CO. OF PA., Harrisburg, Pa. CHRISTMAS SAVINGS CLUB — Account No. 2999, Has Been Paid, with dated Monday entries (Oct. 16, 1911; Oct. 23, 1911; Oct. 30, 1911; Nov. 6, 1911; Nov. 13, 1911; Nov. 20, 1911; Nov. 27, 1911; Dec. 4, 1911; Oct. 9, 1911; Oct. 2, 1911; Sept. 25, 1911; Sept. 18, 1911; Sept. 11, 1911; Sept. 4, 1911; Aug. 28, 1911; Aug. 21, 1911; Aug. 14, 1911; Aug. 7, 1911; July 31, 1911; July 24, 1911; July 17, 1911; July 10, 1911; May 22, 1911; May 29, 1911; June 5, 1911; June 12, 1911; June 19, 1911; June 26, 1911; July 3, 1911; May 1, 1911; May 8, 1911; May 15, 1911; April 8, 1911; April 17, 1911; April 24, 1911; April 10, 1911) with cent amounts from 1 cent through 36 cents.

One of the defendant's customers was the City National Bank of Holyoke, Mass., which during the winter season of 1912 and 1913 obtained from defendant about 4,500 coupon sheets and envelopes, with other necessary supplies, for a Christmas savings club. Barkley, the

patentee, was associated with the Baker-Vater Company, which was in the business of making record blanks and furnishing supplies for banking houses and similar institutions. As such he was introduced and became acquainted with the Landis system in use at the Holyoke Bank. After some correspondence with his associate, Buchanan, located at Chicago, who expressed a desire to engage in the Christmas club supplies business, Barkley finally wrote, May 13, 1913, to his company at Benton Harbor, Mich., stating that the City National Bank had decided "to adopt the savings system of our design," having reference, no doubt, to the book constituting the subject of the patent under consideration.

What features of the system and design belong to Barkley, and whether anything was supplied by him involving invention, is the matter at issue. Whether the so-called system or scheme disclosed and made use of in furthering and conducting the various kinds of special savings accounts contemplated by Landis and Barkley are patentable need not be decided here, since it is evident that all that Barkley did was to embody the Landis club system as contained in the sheets or stubs, and coupon and accompanying envelope, in book form, and this form of so-styled coupon bank deposit book constitutes the basis of the patent in suit. It was so testified by defendant's witnesses, Landis and Boll, and plaintiff's witness, McDonald, auditor of the Bank of Long Island, admitted that "all information on the [plaintiff's patented] coupon books is also contained in Exhibits 1, 2, and 4," being defendant's coupon sheets and envelope.

As to the physical structure of plaintiff's patented book, "comprising a plurality of sheets and detachable coupons" impressed with the copied information from the Landis scheme, the conclusion reached is that it is neither new, in view of the prior art, nor can it be regarded as rising to the dignity of involving invention. Regarding the former, and passing all the other patents cited, and the practiced art regarding the many forms of stub books used in various ways in carrying on many different kinds of business, where such books are required, the prior Henkel patent, No. 726,058, discloses every feature of the claims here involved. It comprises a plurality of sheets and detachable coupons, arranged in arithmetical order, bearing common designating marks; each coupon and corresponding sheet portion having corresponding imprints to indicate the specific act of payment to be made in connection therewith, and the amount to be paid. The difference is that one is styled a sales check, the other a deposit book. The patentee Barkley, however, calls attention and specifies that, while his book is—

"especially applicable to savings accounts, of the character stated, it is not limited thereto, but may be used to advantage for various other purposes wherein a serial or multipartite transaction is involved, notable in connection with installment purchases, and the payment of rents, current service charges of a predeterminable character and the like."

While not unmindful of the well-known presumption in favor of the validity of the patent, and that in doubtful cases increased utility of a device is usually regarded as determining the question of invention,

it will not be forgotten that the patentee admitted that when he launched his enterprise there had been developed a wide demand for the article his company put upon the market; it having also been shown that the defendant had built up under their system a large business, embracing many hundred banks as customers. While plaintiff seemingly prospered in placing their book upon the market, others have likewise fared as well, no doubt largely in proportion to the business methods and energy employed in pushing the enterprise. However, where as in this case no change of any importance was made in the character of the coupon, stubs, and information used as a means of carrying into effect the scheme of depositing savings, and the expedient of using a passbook in form was used in place of a sheet with stubs accompanied by a suitable envelope, which it is manifest would be adapted by any skillful person having that end in view, the effect of deciding the matter favorable to invention will be withheld. What was accomplished by Barkley, in the language of Justice Matthews, Hollister v. Benedict Manufacturing Co., 113 U. S. 72, 5 Sup. Ct. 724 (28 L. Ed. 901)—

"seems to us not to spring from that intuitive faculty of the mind put forth in the search for new results, or new methods, creating what had not before existed, or bringing to light what lay hidden from vision, but, on the other hand, to be the suggestion of that common experience, which arose spontaneously and by a necessity of human reasoning, in the minds of those who had become acquainted with the circumstances with which they had to deal."

Plaintiff's bill will be dismissed, with costs; and it accordingly is so ordered.